

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| KURT JAMES BOWERS, | \* | CIV 10-4006 |
| Petitioner, | \* | MEMORANDUM OPINION AND ORDER |
| -vs- | \* | |
| WARDEN, FEDERAL PRISON CAMP, YANKTON, | \* | |
| Respondent. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Petitioner, Kurt James Bowers, an inmate who is incarcerated at the Federal Prison Camp in Yankton, South Dakota, filed a petition and amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Doc. 1, 18. Pursuant to a June 17, 2008, Judgment of Conviction, Bowers is serving a 36-month sentence after pleading to and being convicted of tax fraud under 26 U.S.C. § 7206(1)[1]. Bowers alleges that the Second Chance Act of 2007 is not being properly applied to him by the Bureau of Prisons (BOP) in their recommendation that he be placed in a Residential Re-entry Center for 120 to 150 days. The Respondent has elected not to seek dismissal for failure to exhaust administrative remedies with regard to the RRC placement issue although this action was filed two months before the administrative appeal process was final. Doc. 7, p.8 n.2. The Court finds the Government has waived the exhaustion requirement with regard to the RRC placement. *See Leuth v. Beach*, 498 F.3d 795,797 (8th Cir. 2007)(exhaustion prerequisite for filing a 28 U.S.C. §2241 petition is judicially created, not jurisdictional, and can be waived).

The Government has moved to consolidate this case with other cases challenging the validity of the implementation of and the application of the Second Chance Act. Doc. 23. Petitioner resists this motion. Given the manageable number of cases involved as well as the different considerations

---

[1] Bowers had a projected release date of February 20, 2011, in consideration of good conduct time release. Information was subsequently submitted to the Court that Bowers lost 16 days of good conduct time and 54 days of non-vested good conduct time. Doc. 35.

pertaining to the individual cases, the Court is denying the motion to consolidate.

18 U.S.C. §§ 3621(b) and 3624(c) govern the BOP's authority to place inmates in its custody in Residential Re-entry Centers (RRCs), formerly referred to as Community Corrections Centers (CCCs). *See Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004). 18 U.S.C. §§ 3621(b)[2] grants the BOP general authority to designate a prisoner's placement while the prisoner is in the BOP's custody. Pursuant to 18 U.S.C. § 3624(c) the BOP has the duty to prepare prisoners for reentry to the community during the final months of the prisoners' terms of imprisonment. Before Congress enacted the Second Chance Act of 2007, Pub.L. No. 110-199, 122 Stat. 657 (2008) (codified at 42 U.S.C. §§ 17501-17555), 18 U.S.C. § 3624(c) provided in relevant part:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, *not to exceed six months, of the last 10 per centum of the term to be served* under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

(Emphasis added).

The Second Chance Act amended Section 3624(c) on April 9, 2008, to provide in relevant part:

(1) In general.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure

---

[2] 18 U.S.C. §§ 3621(b) provides that the BOP consider the following five factors in making placements:
  (1) the resources of the facility contemplated;
  (2) the nature and circumstances of the offense;
  (3) the history and characteristics of the prisoner;
  (4) any statement by the court that imposed the sentence--
     (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
     (B) recommending a type of penal or correctional facility as appropriate; and
  (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

.

that a prisoner serving a term of imprisonment *spends a portion of the final months of that term (not to exceed 12 months)*, under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
(Emphasis added).

In the Second Chance Act, Congress also directed the Director of the BOP to issue regulations which ensure that placement in a community correctional facility be conducted in a manner consistent with 18 U.S.C. 3621(b), be determined on an individual basis, and be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6). The references to the placements being determined on an individual basis and of sufficient duration to provide the greatest likelihood of success were not contained in the earlier version of 18 U.S.C. § 3624.

Five days after the Second Chance Act went into effect, the BOP issued an April 14, 2008 Memorandum explaining the legislative changes to the law and providing guidance to BOP staff on administering the new law. The April 14, 2008 Memorandum is included in the record as Exhibit D to the Declaration of Tim Kortan (Doc. 8) and as Exhibit 1 to Bowers' original Petition. The section of the April 14 Memorandum regarding the procedures that staff should use in making pre-release RRC decisions provides in part: "With minor adjustments ... staff should make inmates' pre-release RRC placement decisions on an individual basis using current Bureau policy, Program Statement No. 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure (12/16/1998)(hereinafter referred to as PS 7310.04)." The April 14 Memorandum calls for the review of inmates for pre-release RRC placements to be made 17-19 months before their projected release dates. The April 14 Memorandum sets forth the criteria for pre-release RRC placements to coincide with the five factors set forth in 18 U.S.C. § 3621(b):

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence--

(a) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

3

>   (b) recommending a type of penal or correctional facility as appropriate; and

> (5) any pertinent policy statement issued by the Sentencing Commission.

The April 14 Memorandum also states, "Assessing inmates under the above criteria necessarily includes continuing to consider the more specific, and familiar, correctional management criteria found in PS 7310.04, including, but not limited to, the inmate's needs for services, public safety, and the necessity of the Bureau to manage its inmate population responsibly." The April 14 Memorandum construes the Second Chance Act's requirement that pre-release RRC placement decisions be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community," to mean "Bureau staff <u>must</u> approach every individual inmate's assessment with the understanding that he/she is now <u>eligible</u> for a maximum of 12 months pre-release RRC placement." The April 14 Memorandum states, "Provisions in PS 7310.04 that reflect any other possible maximum timeframe must be ignored."

The April 14 Memorandum addresses the expansion of pre-release RRC placement to a maximum of 12 months as follows:

> While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

Although the April 14 Memorandum requires the Regional Director's written concurrence for a pre-release RRC placement exceeding 6 months, the April 14 Memorandum states that inmates whose RRC decisions had already been made were also eligible for a maximum of 12 months' RRC placement. Much of the April 14 Memorandum was codified as an interim final rule at 28 C.F.R. §§ 570.20-22 on October 21, 2008.

The Bureau of Prison also issued a November 14, 2008 memorandum regarding responding to requests for transfers to RRCs when more than 12 months remain from a prisoner's projected release date.[3] This memorandum stated that the April 14, 2008 memorandum was to remain in full

---

[3] Mr. Bowers requested that the record be expanded to include this November 14, 2008 Memorandum. Doc. 21. The request is granted and the November 14, 2008 Memorandum is

4

effect and again stressed the requirement of individual consideration as follows:

> Inmates are legally eligible to be placed in an RRC at any time during their prison sentence. Federal Courts have made clear that RRCs are penal or correctional facilities within the meaning of the applicable statutes. Staff cannot, therefore, automatically deny an inmate's request for transfer to a RRC. Rather, inmate requests for RRC placement must receive individualized consideration.

The November 14, 2008 memorandum reiterated, however, that an RRC placement beyond six months should only occur if unusual or extraordinary circumstances are present and if the Regional Director concurs.

In October of 2010 Respondent flied with this Court a June 24, 2010 BOP Memorandum entitled "Revised Guidance for Residential Reentry Center (RRC) Placements." Doc. 37. This June 24, 2010 Memorandum stresses that RRC resources be focused on inmates most likely to benefit from RRC placement in terms of reducing anticipated recidivism. The June 24, 2010 Memorandum states that no longer is Regional Director approval required of RRC placements longer than 6 months. However, the June 24, 2010 Memorandum states that its guidelines regarding the length of RRC placements will have prospective application and that inmates with previously established RRC transfer dates will not be reconsidered. The June 24, 2010 Memorandum, therefore, does not apply to Mr.Bowers.[4]

When Mr. Bowers was transferred from a medium security FCI facility in Engelwood, Colorado, to the Yankton facility in September of 2009 his transfer report included a recommendation that Bowers receive a six-month RRC placement. When Mr. Bowers met with his unit team at the Yankton facility in October of 2009 he inquired as to what RRC placement he could expect. Although Mr. Bowers advised the unit team he expected a six-month RRC placement recommendation consistent with the earlier recommendation, he was advised the unit team would

---

attached to this Memorandum Opinion as Attachment 1. The motion to expand the record also includes requests for discovery involving unidentified information allegedly contained in research materials on the benefits of RRC placements over and below six months and copies of legal authority. This part of the motion is denied.

[4]Mr. Bowers has moved for sanctions pursuant to FED. R. EVID. 11 for the failure to timely produce the Revised Guidance. Doc. 38. After considering the motion and response, the Court is denying the motion for sanctions.

likely recommend a placement of 120 to 150 days because his previous employment record was such that he did not need the same RRC placement as most other inmates. Although Mr. Bowers contends that the unsigned form was not created on October 8, 2009, as it is dated, Respondent has filed a form that states that after consideration of a number of factors, Bowers' unit team recommended placement "which is sufficient duration to provide the greatest likelihood of successful reintegration into the community," and that Bowers was notified on October 8, 2009, of a recommendation of 120 to 150 day placement in an RRC. Doc. 8-6.

Mr. Bowers contends he did not request from his unit team more than six months of RRC placement because he was unaware of the change in law expanding the limit on RRC placement from six months to twelve months. Mr. Bowers contends that his unit team at the Yankton facility violated the Second Chance Act by failing to properly evaluate his case under the factors enumerated in 18 U.S.C. § § 3621(b) and 3624(c)(6), and by unlawfully capping his potential RRC recommendation at six months. Mr. Bowers also contends that Respondent unlawfully delayed forwarding his RCC referral for final review. Bowers further contends that even if his team had followed BOP policy, the BOP policy is unlawful.

I.

## WHETHER THE BOP POLICY ON RRC PLACEMENT APPLICABLE TO BOWERS IS CONTRARY TO LAW?

Mr. Bowers contends that BOP policy actually governing his RRC recommendation was contained in the program statement of PS 7310.04, and that this program statement, enacted almost ten years prior to the Second Chance Act went into effect, reflects the old statute's limitation of RRC placements being six months or ten percent of the inmate's sentence, rather than the twelve months referenced in the Second Chance Act. Bowers also contends that PS 7310.04 fails to implement the Second Chance Act's directive that RRC placements be made to "provide the greatest likelihood of successful reintegration into the community." [5] In addition, Bowers complains of

---

[5] 18 U.S.C. § 3624(c)(6) requires the Director of the Bureau of Prisons to issue regulation after the enactment of the Second Chance Act of 2007, which ensure that placement in a community correctional facility be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community."

6

reliance on the program statement's consideration of the "necessity of the Bureau to manage its inmate population responsibly." *See* PS 7310.04(9).

Mr. Bowers relies on decisions from the Middle District of Pennsylvania and the District of New Jersey as support for his position that BOP policy contained an invalid presumptive six-month cap on RRC placements. *See Krueger v. Martinez*, 665 F.Supp.2d 477, 483 (M.D.Pa. 2009) ("By depriving the initial decision maker of the ability to recommend placement unfettered by a presumptive six month cap, the BOP significantly reduces the possibility of a truly individualized review that objectively determines the duration required 'to provide the greatest likelihood of successful reintegration into the community.'"); *Strong v. Schultz*, 599 F.Supp.2d 556, 563 (D.N.J. 2009)("This Court finds that, by instructing staff that pre-release placement needs can usually be accommodated by a placement of six months or less and by denying staff the discretion to recommend a placement longer than six months (without advance written approval from the Regional Director), the April 14, 2008, Memorandum is inconsistent with the Second Chance Act's amendments to § 3624(c)."). The rationale of the cases relied upon by Mr. Bowers has been rejected in decisions by the district courts within the Eighth Circuit. *See Hewitt v. Jett*, 2010 WL 1417654, *5-7 (D.Minn. March 15, 2010)(slip copy); *Heppner v. Roal*, Civ. No. 09-2926, 2010 WL 1380146, *4 (D. Minn. March 3, 2010);*Esters v. Jett*, Civ. No. 09-1667 (MJD/AJB), 2009 WL 3417900, *4 (D.Minn. Oct.21, 2009). Those cases relied to some extent upon *Miller v. Whitehead*, 527 F.3d 752 (8th Cir. 2008), a case which upheld BOP policy in place prior to the enactment of the Second Chance Act on transfers to an RRC.

Mr. Bowers' characterization of BOP policy is not fully accurate. Although the BOP does rely on PS 7310.04, the April 14 Memorandum requires adjustments to PS 7310.04 to ensure that pre-release RRC placement decisions be made on an individual basis, that review of inmates for pre-release RRC placements be made 17-19 months before their projected release dates, and that the five factors set forth in 18 U.S.C. § 3621(b) be considered in making such placements. The November 14, 2008 memorandum likewise stressed the requirement of individual consideration of requests for RRC placements. 28 C.F.R § 570.22 also requires that consideration for pre-release community confinement be made "in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful

7

reintegration into the community."

18 U.S.C. §§ 3621(b) and 3624(c), read together, vest the BOP with broad discretion in considering RRC placement. Nothing in these statutes mandates that the BOP designate an inmate for RRC placement for any period of time. The Second Chance Act only requires that the BOP "to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c). "Such conditions *may* include a community correctional facility." *Id.* (Emphasis added).The Second Chance Act does not entitle any prisoner to any particular length of time in an RRC. *See Tovey v. Cruz*, 2010 WL 391336, Civ. No. 09-508 (D. Minn. Jan. 25, 2010).

The BOP was delegated the authority to adopt regulations addressing what point up to twelve months would be of sufficient duration to provide the greatest likelihood of successful reintegration. This Court concludes that in consideration of all aspects of the BOP policy, the categorical exercise of discretion that was made by the BOP in making RRC placements is not in violation of the Second Chance Act even though the Act requires individualized determinations of RRC placements. *See Tovey*, 2010 WL at *7.

The policies in issue in this case were not adopted pursuant to the notice and comment process. Even so, they are entitled to consideration, the weight of which is dependent "upon the thoroughness evident in[their] consideration, the validity of[their] reasoning,[their] consistency with earlier and later pronouncements, and all those factors which give [them] power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), *quoted in Sacora v. Thomas*, 628 F.3d 1059, 1067 (9th Cir. 2010).

Mr. Bowers challenges the statement allegedly mad by BOP Director Harley Lappin stating that it was cheaper to house an inmate in a low security prison than it was to place the inmate in a half way house or RRC. Mr. Bowers has filed a May 6, 2008 Memorandum to Chief Probation and Pretrial Services Officers that provides data conflicting with Director Lappin's alleged statements. Doc. 1, Ex. 2. However, the BOP need not provide empirical support for its requirement that unusual circumstances were needed to authorize a RRC placement longer than six months. The BOP is entitled to use its decade of experience in RRC placements in interpreting and administering the

Second Chance Act. *See Sacora*, 628 F.3d at 1069.

Under 18 U.S.C. § 3621(b), the BOP must consider the resources of the facility to which it is considering a given prisoner when it makes a placement decision. Therefore it was not unreasonable for the BOP to conserve the resources of RRCs by imposing the additional requirement of the Regional Director's written concurrence for a pre-release RRC placement exceeding six months. In addition, 42 U.S.C. § 17501(5) states one of the purposes of the Second Chance Act is to:

> assist offenders reentering the community from incarceration to establish a self-sustaining and law-abiding life by providing sufficient transitional services for *as short of a period as practicable*, not to exceed one year, unless a longer period is specifically determined to be necessary by a medical or other appropriate treatment professional [.]

[emphasis added]. This provision also supports the conclusion that the BOP's policies are reasonable and consistent with the Second Chance Act. *See Sacora*, 628 F.3d at 1067. The policies under which the BOP made Mr. Bowers' placement decision are obviously consistent with earlier BOP policy. This consistency is the primary basis of Mr. Bowers' complaint. This Court concludes that the BOP policies in issue are valid, reasonable, and not in conflict with the provisions of the Second Chance Act.

II.
## WHETHER THE BOP VIOLATED THE SECOND CHANCE ACT IN HANDLING PETITIONER'S RRC PLACEMENT RECOMMENDATION?

Mr. Bowers contends the BOP violated the Second Chance Act in handling his RRC placement recommendation. Mr. Bowers contends that his unit team failed to consider the mandatory factors enumerated in 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c)(6), and that his team effectively capped his potential recommendation at six months. Mr. Bowers contends that he has never asserted that he is entitled to a particular period of time in any RRC facility, but is simply requesting that he receive the individualized evaluation that is required by law and that the recommendation be made based on information that applies to him. Mr. Bowers contends that his unit team committed numerous legal errors in making his RRC recommendation and failed to consider the §3621 factors in good faith.

Specifically, Petitioner contends that when he first met his unit team on October 8, 2009, his meeting was conducted hastily and Petitioner had to raise the issue of what RRC recommendation he could expect in advising the unit team that he had received a six-month oral recommendation at his previous facility. Petitioner contends that after the unit team conducted a private meeting of less than a minute he was called into the meeting and informed that they were considering a recommendation of 120 to 150 days. Petitioner contends he was advised that he would be receiving less than a six-month recommendation because he had been gainfully employed before his incarceration and unlike most inmates would not require a full six-month RRC placement.

Mr. Bowers contends that he was not advised of his 120-150 day recommendation until March 14, 2010, and that Respondent's Exhibit E (Doc. 8-6), an unsigned Review for Residential Reentry Center form which contains a checklist of mandatory factors enumerated in 18 U.S.C. § 3621(b), was not created until after this lawsuit. However, an Informal Resolution form is in the record which was signed by Mr. Bowers on October 30, 2009. Doc. 28-2. In this form Mr. Bowers appeals the 120-150 day recommendation based on the failure to consider the five criteria listed in 18 U.S.C. § 3621(b). In the Warden's response to Mr. Bowers' request for Informal resolution, the Warden responded:

> In an attempt to informally resolve your request, your unit team has discussed your concern in regard to the RRC placement recommendation made at your last program review meeting. The team reviewed your situation based on the five factors of the Second Chance Act of 2007. The team has agreed to continue with the original recommendation of 120 to 150 days. The unit team believes that the recommendation is sufficient for your needs.

Doc. 28-2.

In a request for administrative remedy dated November 12, 2009, Mr. Bowers again challenged the 120-150 day recommendation, stating that he was requesting a minimum RRC placement recommendation of 180 days because such a placement was justified in consideration of the 18 U.S.C. § 3621(b) factors. In response, the Warden stated:

> According to criteria identified in the Second Chance Act of 2007 (the Act), pre-release RRC placement decisions must be made on an individual basis in every inmate's case. Among the criteria staff must consider are the factors contained in 18 U.S.C. § 3621(b) which include the resources of the facility contemplated, the nature and circumstances of the offense, the history and characteristics of the prisoner, any

> statement by the court that imposed the sentence [...] and any pertinent policy statement issued by the Sentencing Commission.
>
> In your case, your were recommended for a 120 to 150-day RRC placement. The eligibility provisions of the Act are being utilized in your situation. First, you have a positive employment history indicated by steady employment your entire adult life, you have a letter of interest for employment from Noble Ink and Toner in you central file and you have considerable job skills which are noted in the letter. Next, you were sentenced within the guideline range which was 36 months. Lastly, you have support from family and friends as indicated by a secured residence upon release and regular contribution of money into your Trust Fund account totaling $2,284 in the last 6 months.

Doc. 28-3.

Mr. Bowers on December 9, 2009, filed a Regional Administrative Remedy Appeal in which he challenged the Warden's response based on changes in his assets, and employment opportunities, and contended that he was being punished for not taking part in programs that directly support the prison financially. In the December 22, 2009 response denying the appeal, the Regional Director reiterated that the Second Chance Act of 2007 allowed the BOP to consider all inmates for RRC placements up to a maximum of 12 months and that all RRC placements be made on an individual basis. The response further states, "Among the criteria staff consider are the factors contained in 18 U.S.C. § 3621(b)." Doc. 28-4.

In Mr. Bowers' Central Office Administrative Remedy Appeal dated January 12, 2010, Mr. Bowers complains of being discriminated against because he is white and does not do drugs. Mr. Bowers also complains that his case manager has advised that his case load is full and Mr. Bowers may not receive the 150 days first recommended.. In the March 22, 2010 response denying this appeal, the Administrator of the National Inmate Appeals states that consideration of Mr. Bowers' individual case, along with consideration of the 18 U.S.C. § 3621(b) factors support the placement recommendation. Doc. 28-5.

The record demonstrates that the BOP did not violate the Second Chance Act in handling Mr. Bowers' RRC placement recommendation. The recommendation was made shortly after Mr. Bowers arrived at the Yankton facility. The 18 U.S.C. § 3621(b) factors were repeatedly considered and Mr. Bowers' case was considered on an individual basis. Although a checklist was utilized, an inmate is not entitled to a full-blown analysis of the 18 U.S.C. § 3621(b) factors when a placement decision

is made. *See Miller v. Whitehead*, 527 F.3d 752, 757 (8th Cir. 2008). Although the BOP may have considered factors in addition to those listed in 18 U.S.C. § 3621(b), section 3621(b) provides a nonexclusive list for the BOP to consider. *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 247 (3rd Cir. 2005). The availability or lack of bed space is a valid consideration for an RRC placement. *See Miller v. Whitehead*, 527 F.3d at 758. In addition, the record does not support Mr. Bowers' claim of bad faith. Having determined that the Second Chance Act was not violated in the process of determining Mr. Bowers' RRC placement recommendation, this Court finds no legal justification to second guess or interfere with the discretion of the BOP to determine the proper length of any such placement recommendation.

### III.

### WHETHER PETITIONER MUST EXHAUST HIS ADMINISTRATIVE REMEDIES WITH REGARD TO HIS CLAIM REGARDING THE FAILURE TO PROVIDE AN INCENTIVE PROGRAM AND HIS CLAIM REGARDING THE SUBSISTENCE FEE ASSOCIATED WITH AN RRC PLACEMENT?

For the first time, in his amended petition, Mr. Bowers claims that the Attorney General and BOP failed to comply with 42 U.S.C. § 17541[6] by failing to provide an incentive program. Mr. Bowers also alleges for the first time that subsistence charges during an RRC placement violate his Fifth Amendment and Due Process rights. Respondent resists the consideration of these issues based on Mr. Bowers' failure to exhaust his administrative remedies with regard to these issues.

The Eighth Circuit Court of Appeals has consistently held that before seeking federal habeas corpus relief under 28 U.S.C. § 2241 an inmate must exhaust his available administrative remedies. *See United States v. Chappel*, 208 F.3d 1069 (8th Cir. 2000); *Kendrick v. Carlson*, 995 F.2d 1440, 1447 (8th Cir. 1993). Four objectives are promoted by the exhaustion requirement: "(1) the development of the necessary factual background upon which the claim is based; (2) the exercise of administrative expertise and discretionary authority often necessary for the resolution of the dispute;

---

[6] 42 U.S.C. § 17541(a) provides in part:
The Attorney General, in coordination with the Director of the Bureau of Prisons, shall, subject to the availability of appropriations, conduct the following activities to establish a Federal prisoner reentry initiative:
(1) The establishment of a Federal prisoner reentry strategy to help prepare prisoners for release and successful reintegration into the community . . . .

12

(3) the autonomy of the prison administration; and (4) judicial efficiency from the settlement of disputes at the prison level." *Mason v. Ciccone*, 531 F.2d 867, 870 (8th Cir.1976). These objectives justify requiring exhaustion of administrative remedies for the issues raised by Mr. Bowers concerning 42 U.S.C. § 17541(a), subsistence payments, and the alleged violations of Mr. Bowers' constitutional rights. Accordingly,

IT IS ORDERED:

1. That Petitioner's request for relief under 28 U.S.C. § 2241 is denied:

2. That Petitioner's motion for Temporary Restraining Order or Preliminary Injunction (Doc 22) is denied;

3. That Respondent's Motion to Consolidate Cases (Doc. 23) is denied;

4. That Petitioner's Request to Expand the Record (Doc. 21) is granted in part and denied in part as set forth in footnote 3 of this opinion; and

5 That Petitioner's Motion for Sanctions (Doc. 38) is denied.

Dated this 24th day of February, 2011.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
(SEAL)      DEPUTY